UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ERICA CARDENAS,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**SHORE FUNDING SOLUTIONS INC.**, a New York registered corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Erica Cardenas ("Plaintiff Cardenas" or "Cardenas") brings this Class Action Complaint and Demand for Jury Trial against Defendant Shore Funding Solutions Inc. ("Defendant" or "Shore Funding Solutions") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Cardenas, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

1

## PARTIES

1. Plaintiff Cardenas is a resident of Chula Vista, California.

2. Defendant Shore Funding Solutions is a corporation registered in New York with its headquarters in Melville, New York. Defendant Shore Funding Solutions conducts business throughout this District and throughout the US, including California.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant is headquartered in this District and places telemarketing calls to consumers from this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is headquartered in this District.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States

likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 4.0 billion robocalls were placed in February 2024 alone, at a rate of 137.2 million per day. www.robocallindex.com (last visited March 10, 2024).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

14. Shore Funding Solutions provides capital loans to businesses throughout the US.

15. Shore Funding Solutions places solicitation calls to businesses that may require capital funding.

16. Shore Funding Solutions also calls phone numbers that belong to consumers, as per Plaintiff's experience.

17. Current and former Shore Funding Solutions employees have posted about the cold calling they engaged in to generate business, including:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

4

## Cold calling

Funding Manager (Former Employee) - Melville, NY - September 6, 2021

Have to call merchants and sell Cash advances. Most calls are blocked or they will curse at you for calling. Not an ethical work environment. Actual PAY IS LOW but they will SELL YOU ON THE DREAM. Don't be fooled! [3]

## Run away from this place

Funding Manager (Former Employee) - Melville, NY - October 10, 2023

This company is a joke, bunch of rip offs on commission and salary pay is a joke could be working there for 40+ hours and receive around $480 dollars a week. Have to call 200+ people who are not even interested in loans. They lie about salary on this job posting don't fall for it! Management doesn't care about you only numbers to them. Basically spend the whole day working for $480 a week, pass and no health benefits pass! [4]

## Income potential could be great if you stick with it!

Funding Manager (Former Employee) - Melville, NY - December 16, 2022

 **Indeed Featured review**
The most useful review selected by Indeed

As a new Funding Manager, you won't be getting much in terms of leads, as you will essentially be cold-calling all day (150-250 dials per day). It gets much better when more lead channels are made available as you fund deals and prove yourself.

The starting commission split is poor, but once you hit certain milestones, your compensation can be lucrative. However, this is offset by the fact they pay an hourly wage that most other MCA companies do not. Once you're into your 3rd or 4th month you should be able to fund a good amount of business with minimal cold-calling and your checks will reflect it.

The office vibe is very positive, and everyone was more than willing to help. The back office is extremely efficient and the managers were more than accommodating.

It is a grindy gig and you need thick skin to be successful. However, if you're happy putting your head down and working, you can make some good money here. There are advancement opportunities into management if you produce. [5]

---

[3] https://www.indeed.com/cmp/Shore-Funding-Solutions/reviews
[4] Id.
[5] Id.

5

18. Unfortunately, some of these calls from Shore Funding Solutions are being placed to consumers' phone numbers without consent, including to consumers that registered their phone numbers on the DNC, as per Plaintiff's experience.

19. To make matters worse, Shore Funding Solutions lacks a sufficient opt-out system to ensure that a consumer who notifies Shore Funding Solutions to stop calling them, will be removed from their contact list.

20. Consumers and businesses have posted complaints online about unsolicited calls and text messages they received from Shore Funding Solutions, including complaints from consumers who received additional unsolicited calls after telling the Defendant to stop calling, including:

- "WORST COMPANY EVER. Constantly calls, emails and texts from different numbers for years. Their excuse is that I've initiated contact with them for a business loan that NEVER happened. ***Unsubscribing and telling them you're not interested has no effect and they constantly call and harass***. I wouldn't be surprised if most of these were fake reviews. Reporting them to as many government agencies as possible"[6] (emphasis added)
- "***Never stop calling***. Harassing for loans I do not want!!!!"[7] (emphasis added)
- "This is pretty much a spam/robo call company for small business loans. They buy bulk email addresses and phone numbers and ***spam them like crazy without the ability to get out of their Rolodex***. Everything they do is against the law, but seeing how the FCC doesn't have any real bite, they keep doing it."[8] (emphasis added)

---

[6] https://www.google.com/search?q=%22Shore+Funding
[7] Id.
[8] Id.

- "***They continue to call and harass me despite me requesting multiple times to remove me from the call list as I am on the national Do Not Call Registry*** and they are in violation with their laws."[9] (emphasis added)

21. In response to these calls, Plaintiff Cardenas brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

**PLAINTIFF CARDENAS'S ALLEGATIONS**

22. Plaintiff Cardenas is the sole owner and user of her cell phone number ending in 5615.

23. Plaintiff Cardenas has owned her cell phone number for over 10 years.

24. Plaintiff Cardenas registered her cell phone number on the DNC on November 9, 2023.

25. Plaintiff Cardenas uses her cell phone number for personal use only as one would use a landline telephone number in a home. She has never had her cell phone number associated with a business.

26. Throughout the second half of 2023 and into 2024, Plaintiff Cardenas has received unsolicited calls regarding business finance loans and credit. The callers have been asking to speak to Eric Thompson.

---

[9] https://www.bbb.org/us/ny/melville/profile/financing-consultants/shore-funding-solutions-inc-0121-148174/complaints

7

27. Plaintiff Cardenas does not know who Eric Thompson is.

28. Plaintiff Cardenas received unsolicited calls specifically from Shore Funding Solutions regarding soliciting business capital for Eric Thompson.

29. When Plaintiff Cardenas answered these calls, the callers identified the company name Shore Funding Solutions.

30. Plaintiff Cardenas has told the Shore Funding Solutions employees to stop calling, but the calls continued.

31. In fact, months later, Shore Funding Solutions was still calling Plaintiff's cell phone number.

32. Plaintiff Cardenas received an unsolicited call to her cell phone on January 15, 2024 from 631-246-3297.

33. The caller display showed the name "SHORE FUNDING."

34. When Plaintiff Cardenas answered this call, an employee said that his name is Anthony and that he was calling from Funding Solutions.

35. Anthony called Plaintiff to solicit a business capital loan.

36. Plaintiff Cardenas told Anthony that he was calling the wrong number and asked for her phone number to be removed from Defendant's call list.

37. Despite her stop requests from January 15, 2024 and from well before, Plaintiff Cardenas received an unsolicited call to her cell phone number on January 23, 2024 at 9:02 AM, from 631-246-3297.

38. The caller display for this call shows "SHORE FUNDING":



39. When Plaintiff answered this call, an employee named Anthony (who Plaintiff spoke to previously on January 15, 2024) said that he was calling from Funding Solutions. Anthony was soliciting a business capital loan.

40. As with the previous call, Plaintiff told Anthony that he was calling the wrong number and asked for the calls to stop.

41. On January 30, 2024 at 11:45 AM, Plaintiff Cardenas received another unsolicited call to her call phone, this time from 845-574-9921.

42. When Plaintiff Cardenas answered this call, an employee stated that he was calling from Shore Funding Solutions. He was soliciting a business capital loan.

43. Plaintiff told the employee to stop calling and hung up the phone.

44. Plaintiff Cardenas has never done business with Shore Funding Solutions.

45. The unauthorized solicitation telephone calls that Plaintiff received from or on behalf of Defendant Shore Funding Solutions have harmed Plaintiff Cardenas in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

46. The calls also caused undue distress as Plaintiff was unable to get the calls to stop by asking Shore Funding Solutions to stop calling her cell phone number.

47. Seeking redress for these injuries, Plaintiff Cardenas, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

**CLASS ALLEGATIONS**

48. Plaintiff Cardenas brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Shore Funding Solutions called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Shore Funding Solutions called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the person requested that they stop calling.

49. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons

who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Cardenas anticipates the need to amend the Class definition following appropriate discovery.

50. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

51. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

(c) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

52. **Adequate Representation**: Plaintiff Cardenas will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Cardenas has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Cardenas and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Cardenas nor her counsel have any interest adverse to the Classes.

53. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Cardenas. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex

litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Cardenas and the Do Not Registry Class)**

54. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

55. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

56. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

57. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to

be initiated, telephone solicitations to telephone subscribers such as Plaintiff Cardenas and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

58. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Cardenas and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

59. As a result of Defendant's conduct as alleged herein, Plaintiff Cardenas and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

60. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Cardenas and the Internal Do Not Call Class)**

61. Plaintiff repeats and realleges paragraphs 1-53 of this Complaint and incorporates them by reference herein.

62. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called

party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

63. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

64. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to

16

which they object. 47 U.S.C. § 227(c)(5).

65. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Cardenas requests a jury trial.

DATED this 6th day of June, 2024.

> **ERICA CARDENAS**, individually and on behalf of all others similarly situated,
>
> By: /s/ Stefan Coleman
> Stefan Coleman
> law@stefancoleman.com
> COLEMAN PLLC
> 11 Broadway, Suite 615
> New York, NY 10001
> Telephone: (877) 333-9427
>
> Avi R. Kaufman (FL Bar No. 84382)
> kaufman@kaufmanpa.com
> KAUFMAN P.A.
> 237 S Dixie Hwy, Floor 4
> Coral Gables, FL 33133
> Telephone: (305) 469-5881
>
> *Attorneys for Plaintiff and the putative Classes*